UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GREEN HILLS DEVELOPMENT                           PLAINTIFFS
COMPANY, LLC, AND DELL
GROUP HOLDINGS, LLC

V.                                          CIVIL ACTION NO. 3:19-CV-416-DPJ-FKB

OPPENHEIMER FUNDS, INC.,                         DEFENDANTS
D/B/A OPPENHEIMER
ROCHESTER HIGH YIELD
MUNICIPAL FUND, ET AL.

ORDER

Plaintiff Green Hills Development Company, LLC, failed to pay taxes and special assessments for lots it owned in Stonebridge, a multi-use development in Rankin County, Mississippi. Green Hills eventually lost the property and says that the project's majority bondholder, Defendant Oppenheimer Funds, Inc., d/b/a Oppenheimer Rochester High Yield Municipal Fund, should have modified the special assessments to allow Green Hills to weather an economic downturn starting in 2007. Green Hills sued Oppenheimer, along with the bond Trustee, UMB Bank, and three entities UMB established to purchase the property after Green Hills's rights expired. Plaintiff Dell Group Holdings, LLC, a minority bondholder, asserts claims against the same Defendants, saying that they breached their duties to it. Defendants seek dismissal of all claims. For the following reasons, Defendants' Motion to Dismiss [4] is granted in part and denied in part.

I.     Facts and Procedural History

The following facts come from the Complaint, the supporting documents, and the public record. In February 2007, the Rankin County Board of Supervisors created the Stonebridge Public Improvement District ("the SPID") to manage and finance public improvement services

for property located within the newly established Stonebridge development. Plaintiff Green Hills was the developer and owned the majority of the property. State Ct. R. [1-1] at 11, Compl. ¶ 3.11.

Later that year, in September 2007, the SPID board issued bonds through a Trust Indenture between SPID as Issuer and Bank of the Ozarks as Trustee. Plaintiffs allege that Defendant Oppenheimer "was and remains" the majority bondholder under the Trust Indenture. *Id.* at 9, Compl. ¶ 3.6.[1] The bondholders were to be repaid through special assessments levied as taxes against landowners in the Stonebridge development; those assessments were first levied in 2008.

According to Plaintiffs,

> [i]t was the intent and expectation of all parties to the Bond Transaction that the purchasers of the residential lots and commercial parcels within Stonebridge would pay the special assessments. It was never the intent or expectation of the parties that Green Hills, the developer, would or could fund these special assessments.

*Id.* at 10, Compl. ¶ 3.9. And Green Hills didn't. While residential lots in Stonebridge initially sold well, "[i]n late 2007 and throughout 2008, . . . the real estate market entered a severe recession" resulting in the cessation of lot sales by the end of 2007. *Id.* at 10–11, Compl. ¶ 3.10. That left Green Hills holding the bag for "the majority of the special assessments," which it never paid. *Id.* at 11, Compl. ¶ 3.11. Although Green Hills asked Oppenheimer and the Trustee to lower or forbear the special assessments, they refused. *Id.* at 12, Compl. ¶ 3.13.

"Ultimately due to the excessive unpaid tax debt, the unsold Stonebridge residential lots and commercial parcels . . . were struck off to the [S]tate of Mississippi." *Id.* at 11–12, Compl.

---

[1] Defendants say that Oppenheimer Rochester High Yield Municipal Fund, "a wholly separate legal entity established as a distinct series under a Delaware statutory trust," and not Oppenheimer Funds, Inc., is the majority bondholder. Def.'s Mem. [5] at 2 n.4.

¶ 3.12.  Green Hills had, but did not exercise, a statutory right of redemption.  Miss. Code Ann. § 27-45-3.

At some point, Oppenheimer "elected to replace Bank of the Ozarks with [Defendant] UMB Bank" as Trustee under the Trust Indenture.  State Ct. R. [1-1] at 13, Compl. ¶ 3.16. "Oppenheimer holds both direct and indirect ownership interests" in UMB Bank.  *Id.*  And Plaintiffs say Oppenheimer made this appointment "as part of a strategy to take over Stonebridge and damage and destroy Green Hills'[s] relationship with the property owners and the homeowners association of Stonebridge and investment in Stonebridge."  *Id.*  Once in place as the Trustee, "Oppenheimer directed UMB Bank to create" Defendants Stonebridge Holdings I, LLC; Stonebridge Holdings II, LLC; and Stonebridge Holdings III, LLC (referred to by parties as the "SPEs") "for the designated purpose of purchasing the" lots Green Hills lost to the state. *Id.* at 14, Compl. ¶ 3.17.  All three SPEs "are 100% owned by UMB Bank."  *Id.* at 16, Compl. ¶ 3.23.

To facilitate these purchases, "UMB Bank entered an illegal Forbearance Agreement with administrative agencies of Rankin County and the Mississippi Secretary of State in an unauthorized and illegal effort to forbear on existing and future special assessments."  *Id.* at 14, Compl. ¶ 3.18.  In the most general terms, the May 2016 Forbearance Agreement waived the right to collect some delinquent and future special assessments and deferred collection on others during the term of the agreement.  State Ct. R. [1-1] at 97–113, Forbearance Agreement.  The SPEs then bought the property from the Mississippi Secretary of State approximately one month later.  "Funding for the . . . purchase was made through a loan from Oppenheimer to UMB Bank in excess of $3 million."  State Ct. R. [1-1] at 16, Compl. ¶ 3.21.

Green Hills has filed two lawsuits challenging these events. Green Hills first sued these same defendants—*sans* Oppenheimer—to challenge the validity of the sale. That case was ultimately heard in the Chancery Court of Rankin County, Mississippi, where the chancellor granted summary judgment in the defendants' favor, confirming both the validity of the taking and the subsequent sale. The Mississippi Supreme Court affirmed that ruling in part. It agreed that Green Hills had notice of its default and an opportunity to file an application to retain its ownership interest. *Green Hills Dev. Co., LLC. v. Sec'y of State*, 275 So. 3d 1077, 1081 (Miss. 2019). Thus, the Secretary of State was free to sell the property. *Id.* But the appellate court also found that Green Hills's ongoing involvement with Stonebridge gave it standing to challenge whether the subsequent sale to the SPEs violated Mississippi law. *Id.* The court therefore remanded the case to the chancery court, noting that Green Hills had requested discovery on the disputed sale. *Id.* at 1083.[2]

Of course, the pending state-court case is not the only suit Green Hills filed; it also filed this suit, with Dell Group, against Oppenheimer, UMB Bank, and the SPEs in Hinds County Circuit Court on May 16, 2019. The Complaint alleges the following claims under Mississippi law: (1) breach of the duty of good faith and fair dealing; (2) tortious interference with business relations; (3) breach of fiduciary duty; (4) unjust enrichment; (5) negligence, gross negligence, and wantonness; (6) punitive damages; (7) civil conspiracy; and (8) accounting. Defendants removed the case to this Court and moved for dismissal of all claims under Federal Rule of Civil

---

[2] The issues in the state-court case appear to overlap those Plaintiffs assert in this case—at least as to Green Hills. While Defendants have expressly reserved their right to assert *res judicata*, collateral estoppel, and claim splitting, *see* Def.'s Mem. [5] at 4 n.8, there may also be abstention concerns. Accordingly, the parties should discuss these threshold issues with the magistrate judge and determine whether they should be addressed before reaching the merits.

Procedure 12(b)(6).  The Court has personal and subject-matter jurisdiction under 28 U.S.C. § 1332.

II.     Standard

When considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations and footnote omitted).  This standard "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements."  *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556)).

In considering a motion under Rule 12(b)(6), the Court should ordinarily "limit itself to the contents of the pleadings, including attachments thereto."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  The Court may also consider documents "referred to in the complaint[]" that "are central to the plaintiffs' claims."  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 305 (5th Cir. 2007).  Finally, "[t]he court may . . . refer to matters of public

5

record." *Hicks v. Parker*, 349 F. App'x 869, 870 (5th Cir. 2009). The documents that the parties submitted are proper for the Court's consideration of Defendants' motion.

III. Analysis

    A. Breach of the Duty of Good Faith and Fair Dealing

Green Hills and Dell Group allege that "[a]s parties to the Bond Transaction, Oppenheimer and UMB Bank owe to the other parties to the Bond Transaction as well as Plaintiffs a duty to act with good faith and fair dealing in all matters involving the Bond Transaction." State Ct. R. [1-1] at 19, Compl. ¶ 4.2. "The duty of good faith and fair dealing arises from the existence of a *contract* between parties." *Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1207 (Miss. 2001) (citing *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992)). The question presented is whether there is a contract between the parties.

Plaintiffs say there is, arguing first that "Green Hills was a party to agreements among the SPID Transaction, most notably the Acquisition Agreement" and the Trust Indenture. Pls.' Mem. [11] at 6. In a footnote, Plaintiffs list ten agreements they say encompass the "SPID Transaction," claiming that Green Hills is a party to "many" of them. Pls.' Mem. [11] at 2 n.2. But because Plaintiffs fail to specifically address those other documents—or identify one where Green Hills and a Defendant were both parties—the Court focuses on the only two agreements Plaintiffs actually discuss, the Acquisition Agreement and the Bond Indenture.

Starting with the Acquisition Agreement, it was "entered into . . . by and between Green Hills . . . and the Stonebridge Public Improvement District." Acquisition Agreement [10-1] at 1. So while Green Hills was a party to this contract, it bound neither Oppenheimer nor UMB Bank, the successor Trustee.[3]

---

[3] There does not appear to be any good-faith-and-fair-dealing claim against the SPEs.

6

Turning to the Trust Indenture, the cover page says it is a "Trust Indenture between Stonebridge Public Improvement District[,] Rankin County, Mississippi[,] and Bank of the Ozarks[,] Little Rock, Arkansas." State Ct. R. [1-1] at 27, Trust Indenture Cover Page. The agreements opening paragraph then states that it is "by and between Stonebridge Public Improvement District, Rankin County, Mississippi (the 'Issuer') . . . and Bank of the Ozarks, Little Rock, Arkansas . . . [(]the 'Trustee')." *Id.* at 32, Trust Indenture at 1. And consistent with those declarations, the only signatories are SPID and Bank of the Ozarks. *Id.* at 78, Trust Indenture at 47.

All of that notwithstanding, Green Hills claims that it too is a party to the Trust Indenture because the agreement fails to define the word "parties"; Green Hills is referenced as the "Developer"; and "the entire purpose of the Trust Indenture is to provide the mechanism whereby the Developer would be paid." Pls.' Mem. [11] at 7–8. Thus, according to Green Hills the Trust Indenture is ambiguous as to whether it is a party.

Not so. "An ambiguity is defined as a susceptibility to two reasonable interpretations." *Dalton v. Cellular S., Inc.*, 20 So. 3d 1227, 1232 (Miss. 2009) (quoting *Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 129 F.3d 802, 811–12 (5th Cir. 1997)). The Trust Indenture makes plain that it is "between" SPID and Bank of the Ozarks; they are the "parties" to the agreement; and they are the only ones who signed it. There is no reasonable interpretation of the Trust Indenture under which Green Hills—a non-signatory—could be considered a party.

Plaintiffs seem to recognize that possibility and alternatively argue that Green Hills is a third-party beneficiary to the Trust Indenture to which Oppenheimer and UMB Bank owed a duty of good faith and fair dealing. It is true that "intended third-party beneficiaries of a contract [may] sue for breach of the duty of good faith and fair dealing." *Radian Asset Assurance Inc. v.*

7

*Madison Cty.*, No. 3:13-CV-686-CWR-LRA, 2015 WL 1780190, at *3 (S.D. Miss. Apr. 20, 2015). Mississippi courts use the following test to determine third-party beneficiary status:

> (1) When the terms of the contract are expressly broad enough to include the third party either by name [or] as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.

*Cope v. Thrasher Constr., Inc.*, 231 So. 3d 989, 993 (Miss. 2017) (quoting *Simmons Hous., Inc. v. Shelton*, 36 So. 3d 1283, 1286 (Miss. 2010)); *see also Adams v. Greenpoint Credit, LLC*, 943 So. 2d 703, 708–09 (Miss. 2006) (explaining that, for a non-party to be a third-party beneficiary of a contract, "[t]here must have been a legal obligation or duty on the part of the promise to such third person beneficiary. The obligation must have been a legal duty which connects the beneficiary with the contract").

Defendants say Green Hills is not a third-party beneficiary of the Trust Indenture because the contract expressly states in section 14.03 that it confers no rights on anyone "other than the parties hereto and the Holders of the Bonds." State Ct. R. [1-1] at 77, Trust Indenture at 46. The Fifth Circuit, applying Mississippi law, considered a similar provision in a contract and found that it "reflect[ed] the parties' intent to exclude [the plaintiff] as a third-party beneficiary." *McQueen Contracting, Inc. v. Fid. & Deposit Co. of Md.*, 863 F.2d 1216, 1223 (5th Cir. 1989) (construing contract provision stating "No right of action shall accrue on this bond to or for the use of any person or corporation other than [the City of Biloxi]"), *vacated in part on reh'g*, 871 F.2d 32 (5th Cir. 1989); *accord Garrett Enters. Consol., Inc. v. Allen Utils., LLC*, 176 So. 3d 800, 805 (Miss. Ct. App. 2015) (finding clause providing "Nothing . . . in this Agreement is intended to or shall be construed to create any rights for or to bestow any benefits upon third parties" demonstrated the "parties' clear disclaimer of any intent to create third-party rights").

8

Plaintiffs attempt to distinguish these holdings as *dicta* and argue that section 14.03 is just a "boilerplate provision [that] conflicts with the many other provisions of the contract that expressly benefit Green Hills as Developer." Pls.' Mem. [11] at 13. They therefore revisit their ambiguity argument, claiming that "[t]he purpose [of the Trust Indenture] was to pay Green Hills for carrying out the [Stonebridge] Project." *Id.* at 12. But the stated purpose of the Trust Indenture was "to provide funds . . . for the payment of the costs of the Project," whether those costs were payable to the Developer or otherwise. State Ct. R. [1-1] at 43, Trust Indenture at 12. And boilerplate or not, the Court cannot ignore section 14.03 or read it out of the contract. That provision does not conflict with the description of the contracting parties, and it unambiguously states that the Trust Indenture confers no rights on anyone other than those parties and the bondholders. Green Hills is neither mentioned nor suggested. Under Mississippi law, section 14.03 precludes Green Hills' claim to third-party-beneficiary status.

Green Hills's final argument suggests that Oppenheimer "put itself in a position of special relationship vis-à-vis Plaintiffs through the control and authority exerted over the Stonebridge Development," thereby giving rise to an extra-contractual duty of good faith and fair dealing. Pls.' Mem. [11] at 14. Plaintiffs cite no binding authority establishing an extra-contractual duty of good faith and fair dealing under Mississippi law outside the context of a claim for breach of fiduciary duty. *See* Pls.' Mem. [11] at 14–15 (citing *Wathor v. Mut. Assur. Adm'rs, Inc.*, 87 P.3d 559, 562 (Okla. 2004); *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793 (10th Cir. 1995)). And even assuming Oppenheimer was a party to the Trust Indenture, Green Hills was not. Defendants' motion to dismiss is granted as to Green Hills's good-faith-and-fair-dealing claim.

9

Plaintiff Dell Group is different. Both Plaintiffs asserted this claim. *See* State Ct. R. [1-1] at 20, Compl. ¶ 4.2 (averring that "Oppenheimer and UMB Bank owe to . . . the Plaintiffs a duty to act with good faith"). Yet Defendants limit their argument to Green Hills. *See* Defs.' Mem. [5] at 7–10. Moreover, Defendants' argument as to Green Hills would not apply to Dell Group. As noted, section 14.03 confers no rights on anyone "other than the parties hereto and the Holders of the Bonds." State Ct. R. [1-1] at 77, Trust Indenture at 46. Defendants have not addressed Dell Group's rights or its good-faith-and-fair-dealing claim. The motion to dismiss is denied as to that claim.

B.      Tortious Interference with Business Relations

Green Hills asserts a claim for tortious interference with business relations. *See* State Ct. R. [1-1] at 22, Compl. ¶ 4.8. It does not appear that Dell Group joins in that claim, and neither party addresses the claim as to that Plaintiff. This section therefore focuses on Green Hills.

"[T]ortious interference with business relations occurs when a person unlawfully diverts prospective customers away from one's business." *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998). To establish a claim for tortious interference with a business relationship, the plaintiff must show:

(1)  The acts were intentional and willful;

(2)  The acts were calculated to cause damage to the plaintiffs in their lawful business;

(3)  The acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); [and]

(4)  Actual damage and loss resulted.

*MBF Corp. v. Century Bus. Commc'ns, Inc.*, 663 So. 2d 595, 598 (Miss. 1995) (quoting *Nichols v. Tri-State Brick & Tile*, 608 So. 2d 324, 328 (Miss. 1992)). While a defendant "may refuse to

10

have business relations with any person whomsoever, . . . he cannot . . . influence others to the same course, for the purpose of injuring the business of such other." *Cenac*, 609 So. 2d at 1269 (quoting *Wesley v. Native Lumber Co.*, 53 So. 346, 347 (Miss. 1910)).

Defendants argue that "nothing in [the Complaint] alleges that [they] kept others from doing business with Green Hills or that any act was not done for legitimate business purposes." Defs.' Mem. [5] at 11. Looking at the Complaint, it does include many conclusory assertions that the Court may not consider. *Iqbal*, 556 U.S. at 681. For example, Plaintiffs aver that "Oppenheimer and UMB Bank undertook acts to interfere with Green Hills'[s] relationships with the existing landowners within the Stonebridge Development, the homeowners association, and Rankin County." State Ct. R. [1-1] at 13, Compl. ¶ 3.14. They also assert that Defendants "misrepresented the intentions of Green Hills and cast Green Hills in a light which has interfered with Green Hills'[s] relationships with Rankin County, the Stonebridge homeowners, and the homeowner's association at Stonebridge" and "[s]uch acts have also damaged Green Hills'[s] relationships with the public"). *Id.* at 19, Compl. ¶ 3.27. These averments fail, for example, to identify the specific representations Defendants allegedly made, to whom, or why they are untrue or cast Green Hills in an unfair negative light.

Instead, the crux of Plaintiffs' claims against Defendants is that they refused to forbear the special assessments that Green Hills was struggling to pay and orchestrated the purchase of the lots after Green Hills lost them. It seems that the Trustee could have modified the special assessments with approval of the bondholders. *See* State Ct. R. [1-1] at 72, Trust Indenture § 11.07. But Plaintiffs have not shown that either Oppenheimer or UMB as Trustee were legally obligated to do so.

There are two additional facts Plaintiffs pleaded that might relate to the tortious-interference claim, but both lack sufficient factual content to find a plausible claim at this point. First, they say Oppenheimer sued Green Hills and thereby "severely damaged" Green Hills and the homeowners. State Ct. R. [1-1] at 13, Compl. ¶ 3.15. Next, they state that appointing UMB Bank interfered with Green Hills's business. *Id.* at 13–14, Compl. ¶ 3.16. For starters, Plaintiffs never pleaded when these events occurred. If they happened after Green Hills lost the property, then it is hard to plausibly see how they interfered with Green Hills's business relations. More generally, they do not plead non-conclusory facts demonstrating that these events interfered with Green Hills's customers. For example, which customers quit doing business with Green Hills, when, and how was it related to these events? And as for the substitution of the trustee, how did that make a difference as to this claim? It appears that Oppenheimer, as majority bondholder, could have prevented the modification that Green Hills requested whether UMB or Bank of Ozark served as the Trustee. *See* State Ct. R. [1-1] at 72, Trust Indenture § 11.07. These are examples. And because the Complaint does not allege that Defendants' actions caused others to refrain from doing business with Green Hills, it does not state a claim for tortious interference with business relations.

Having said that, "a plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). So the Court will give Plaintiffs an opportunity to seek leave to amend as to this claim. *Id.* ("[A]lthough a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so.").

C. Breach of Fiduciary Duty

Dell Group alleges that Oppenheimer and UMB Bank breached their fiduciary duties to it. *See* State Ct. R. [1-1] at 18–19, Compl. ¶¶ 4.10–12. And though Plaintiffs' memorandum sometimes uses the term "Plaintiffs" when addressing this claim, *see* Pls.' Mem. [11] at 30, Green Hills never pleaded breach-of-fiduciary-duty. *Id.* Accordingly, the Court focuses on Dell Group.

"Mississippi law is well-settled . . . that in order to establish a claim for breach of fiduciary duty, [the plaintiff] must first establish a duty." *Mabus v. St. James Episcopal Church*, 884 So. 2d 747, 758 (Miss. 2004). A fiduciary duty exists where "there is a relation between two people in which one person is in a position to exercise a dominant influence upon the former, arising either from weakness of mind or body, or through trust." *Id.* (quoting *Mullins v. Ratcliff*, 515 So. 2d 1183, 1191 (Miss. 1987)).

Starting with UMB Bank, it owed the bondholders—including Dell Group—a fiduciary duty. *See Broad v. Rockwell Int'l Corp.*, 614 F.2d 418, 432 (5th Cir. 1980) (concluding that trustee under trust indenture governed by New York law owed bondholders fiduciary duties). So the question is whether Dell Group sufficiently pleaded that UMB Bank breached that duty.

The Complaint plausibly pleads such a claim in at least four ways. First, it asserts that when UMB Bank was substituted as Trustee, Defendants failed to disclose that Oppenheimer "holds both direct and indirect ownership interests" in UMB Bank. State Ct. R. [1-1] at 13–14, Compl. ¶ 3.16. Second, Dell Group says that, although "unanimous consent of all bondholders" was required to modify the Trust Indenture, UMB Bank failed to obtain that consent before entering into the May 2016 Forbearance Agreement. *Id.* at 15, Compl. ¶ 3.20. Third, according to Dell Group, when the Stonebridge parcels were later sold, "no funds were paid to Dell Group

13

for any past due special assessments although Oppenheimer received payment on its bonds." *Id.* at 17, Compl. ¶ 3.23. Finally, Dell Group says UMB Bank's actions "put at risk the tax-exempt status of the bonds held by Dell Group" because as a bank UMB Bank was prohibited from indirectly purchasing the property. *Id.* at 23, Compl. ¶¶ 3.22, 3.25, 4.12 (citing Miss. Code Ann. § 29-1-95). While there may be other legal issues to address as to these assertions, Defendants have not shown that Dell Group failed to plead a plausible breach-of-fiduciary-duty claim as to UMB Bank. The motion to dismiss is denied as to that claim.

Turning to Oppenheimer, Plaintiffs assert that it "undertook to act as Trustee," thereby creating "a special relationship" with resulting fiduciary duties to Dell Group. Pls.' Mem. [11] at 31. As an initial point, Dell Group has cited no binding authority suggesting that a majority bondholder has a fiduciary duty to minority bondholders. Instead, Plaintiffs cite bankruptcy cases construing the statutory phrase "acting in a fiduciary capacity" for purposes of nondischargeable debts in arguing that Oppenheimer, through its alleged control of UMB Bank, acted as Trustee thereby undertaking fiduciary duties. *See id.* (citing *In re Kalinowski*, 449 B.R. 797, 812 (Bankr. D.N.M. 2011); *In re White*, No. 05-21644-BKC-PGH, 2005 WL 5154692, at *10–11 (Bankr. S.D. Fla. Nov. 21, 2005)). Absent relevant authority, the Court is not willing to expand the law as Dell Group suggests.[4]

So the question is whether existing Mississippi law would recognize a fiduciary duty between Oppenheimer and Dell Group.

> To determine whether a fiduciary relationship exists in a commercial transaction, the Court considers "whether (1) the parties have shared goals in each other's commercial activities, (2) one of the parties places justifiable confidence or trust

---

[4] It is worth noting that Plaintiffs stop well short of suggesting that UMB Bank and Oppenheimer are alter egos, a legal theory Mississippi does recognize when two legal entities should be considered as one.

14

in the other party's fidelity, and (3) the trusted party exercises effective control over the other party."

*Thrash v. Deutsch, Kerrigan & Stiles, LLP*, 183 So. 3d 838, 842 (Miss. 2016) (quoting *Hartman v. McInnis*, 996 So. 2d 704, 708 (Miss. 2007)).

While Dell Group arguably alleges facts to support a finding on the first factor, the Complaint is devoid of any allegations that Dell Group "place[d] justifiable confidence or trust" in Oppenheimer's "fidelity" or that Oppenheimer "exercise[d] effective control over" Dell Group. *Id.* Nor does the Complaint contain facts showing that Oppenheimer controlled Dell Group in any way. Dell Group's breach-of-fiduciary-duty-claim against Oppenheimer fails to state a claim and is therefore dismissed. Again though, this dismissal is without prejudice as Dell Group has had but one opportunity to plead sufficient facts. *See Hart*, 199 F.3d at 247 n.6.

### D. Unjust Enrichment

Both Plaintiffs assert that Defendants have been unjustly enriched at their expense. "Unjust enrichment applies to situations 'where there is no legal contract and "the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another."'" *Ground Control, LLC v. Capsco Indus., Inc.*, 120 So. 3d 365, 371 (Miss. 2013) (emphasis omitted) (quoting *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005)). In support of this claim, Plaintiffs argue:

> when Oppenheimer and UMB Bank failed to protect the viability of the project by temporarily forbearing on special assessments during the housing-market crisis and then ultimately purchased the lands after Green Hills was unable to pay the special assessments, Defendants took the benefit of Green Hills'[s] work as the project developer. Defendants therefore cannot in good consci[ence] retain the financial benefits of property ownership which should have never been lost by Green Hills due to Defendants['] acts.

Pls.' Mem. [11] at 32.

15

Starting with Green Hills, the Complaint fails to allege that it was not paid for any work it performed as the project developer. Instead, Plaintiffs' theory of unjust enrichment is that Defendants' failure to forbear caused Green Hills to lose the property, which Defendants ultimately purchased from the State through the UMB Bank-owned holding companies—the SPE Defendants. But Plaintiffs have not demonstrated that Defendants were legally required to forbear when Green Hills failed to pay its special assessments and taxes, and they admit that Green Hills lost title to the Stonebridge properties. State Ct. R. [1-1] at 11–12, Compl. ¶¶ 3.11–3.12.[5] Absent some ownership interest in the properties, Green Hills has not shown how Defendants are in possession of its "money or property." *Powell*, 912 So. 2d at 982.

The same is true for Dell Group. Plaintiffs' unjust-enrichment averments and their legal arguments all focused on Green Hills. There are no factual averments in the Complaint identifying any Dell Group property or money that Defendants wrongfully possess, and Plaintiffs did not mention Dell Group in their response to this portion of Defendants' motion to dismiss. So, to the extent they collectively pleaded this count in the Complaint, there are no facts to plausibly support it as to Dell Group. The unjust-enrichment claim is dismissed.

E.  Negligence-Based Claims

As to the negligence-based claims, Defendants argue only that they fail for lack of a legally cognizable duty owed to Plaintiffs. "In analyzing an actor's alleged negligence, this Court asks whether a duty exists and whether it has been breached." *Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1143 (Miss. 2004).

---

[5] As noted, the Mississippi Supreme Court has affirmed the validity of that taking, *Green Hills Dev. Co.*, 275 So. 3d at 1081; that issue may resurface when Defendants present the preclusion defenses they reserved.

To begin, there is a duty between UMB Bank and Dell Group. *See* supra at § IIIC. As for the other relationships, the existence of a duty turns on whether the defendant "could reasonably foresee" that its actions would cause the plaintiff's injury. *Rein*, 865 So. 2d at 1143. Taking Dell Group and Green Hills together, Plaintiffs argue that "[t]he special relationship undertaken by Oppenheimer with respect to Plaintiffs gave rise [to] a duty in the more general tort sense due to the foreseeability of harm to all parties involved in the land development." Pls.' Mem. [11] at 23.

Plaintiffs base that argument on a host of non-binding authority from California and West Virginia. But they also urge the Court to follow the Mississippi Court of Appeals decision in *Scafide v. Bazzone*, where the court listed the following factors described by "one treatise [as] often considered in determining whether to impose a duty":

(1) Foreseeability of harm to the plaintiff;

(2) The degree of certainty that the plaintiff suffered injury;

(3) The closeness of the connection between the defendant's conduct and the injury suffered;

(4) The moral blame attached to the defendant's conduct;

(5) The policy of preventing future harm;

(6) The extent of the burden to the defendant and community of imposing a duty to exercise care with resulting liability for breach; [and]

(7) The availability, cost and prevalence of insurance for the risk involved.

962 So. 2d 585, 594 (Miss. Ct. App. 2006) (quoting 1 J.D. Lee and Barry A. Lindahl, Modern Tort Law § 3:3 3–12 (2d ed. 2002)).

The *Scafide* court neither adopted nor applied the factors it identified as "often considered" in the analysis of when a duty arises, and it ultimately held that a consulting neurosurgeon who discussed the plaintiff-patient's medical information with the patient's

17

treating physician and later examined the patient's MRI owed no duty to the patient, with whom he had no doctor-patient relationship. *Id.* Regardless, foreseeability is the linchpin for legal duty, and the Complaint alleges that harm to Green Hills was reasonably foreseeable as a result of Defendants' actions. The negligence-based claims may otherwise be legally infirm, but at this stage, Plaintiffs have sufficiently pleaded the existence of a duty.

F. Civil Conspiracy

"Under Mississippi law, '[a] conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.'" *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004) (quoting *Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999)). "It is elementary that a conspiracy requires an agreement between the co-conspirators." *Id.* Here, the Complaint contains no factual averments that Defendants had an agreement to accomplish an unlawful purpose. The Complaint fails to state a plausible claim for civil conspiracy, so this claim is dismissed without prejudice. *See Hart*, 199 F.3d at 247 n.6.

G. Accounting

"An accounting is by definition a detailed statement of the debits and credits between parties arising out of a contract or a fiduciary relation." *Univ. Nursing Assocs., PLLC v. Phillips*, 842 So. 2d 1270, 1274 (Miss. 2003) (quoting *State ex rel. King v. Harvey*, 214 So. 2d 817, 819 (Miss. 1968)). "[A]n accounting implies that one is responsible to another for moneys or other things, either on the score of contract or of some fiduciary relation, of a public or private nature, created by law, or otherwise." *Id.* As with Plaintiffs' unjust-enrichment claim, the claim for an accounting fails because Plaintiffs do not allege that Defendants maintain accounts that include assets belonging to Plaintiffs. Plaintiffs' claim for an accounting is dismissed.

F.  Punitive Damages

Finally, Defendants say Plaintiffs fail to state a claim for punitive damages. Punitive damages can be awarded on a breach-of-fiduciary duty claim. *Ross-King-Walker, Inc. v. Henson*, 672 So. 2d 1188, 1192 (Miss. 1996). Additionally, punitive damages may be proper in the event a plaintiff demonstrates gross negligence. *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 290 (Miss. 1992). That said, the Court is aware of Plaintiffs' heavy burden in establishing an entitlement to punitive damages. While they may not ultimately satisfy this burden, their allegations get past Rule 12(b)(6).

IV.  Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Defendants' Motion to Dismiss [4] is granted in part as to the following claims: Green Hills's claim for breach of the covenant of good faith and fair dealing, Dell Group's claim for breach of fiduciary duty against Oppenheimer, and Plaintiffs' claims for tortious interference, unjust enrichment, civil conspiracy, and accounting. The motion is denied as to Dell Group's claim for breach of the duty of good faith and fair dealing, its claim for breach of fiduciary duty as to UMB Bank, and Plaintiffs' negligence-based and punitive-damages claims. Plaintiffs shall have 14 days from the entry of this order to file a properly supported motion to amend, if they so desire.

**SO ORDERED AND ADJUDGED** this the 23rd day of January, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

19