UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GREEN HILLS DEVELOPMENT                                    PLAINTIFFS
COMPANY, LLC, AND DELL
GROUP HOLDINGS, LLC

V.                                      CIVIL ACTION NO. 3:19-CV-416-DPJ-FKB

OPPENHEIMER FUNDS, INC.,                                    DEFENDANTS
D/B/A OPPENHEIMER
ROCHESTER HIGH YIELD
MUNICIPAL FUND, ET AL.

ORDER

This case addresses property rights to a multi-use development called "Stonebridge,"

located in Rankin County, Mississippi.  Defendants UMB Bank, N.A., Oppenheimer Funds, Inc.,

and three LLCs (collectively the "Stonebridge LLCs") recently filed counterclaims against

Plaintiffs Green Hills Development Company, LLC, and Dell Group Holdings, LLC.  The

counterclaims also named three new parties as defendants, all of which generated the six motions

this Order resolves.  The first three ask the Court to dismiss the counterclaims against Green

Hills and Dell Group.  *See* Mot. [65]; Mot. [67]; Mot. [69].  The remaining motions address

effort to join the three nonparties as counterclaim defendants.  *See* Mot. to Join [36]; Mot. to Stay

Mot. to Join [51]; Mot. to Serve [93].  For the following reasons, the Court denies the motions to

dismiss and allows joinder of and service on the three new parties.  The related motion to stay is

denied as moot.

I.      Facts and Procedural History[1]

        The convoluted history of this dispute covers almost a decade.  So for context, the

general issues presented by the motions to dismiss are (1) whether Counterclaim Plaintiffs

sufficiently pleaded claims for slander of title, tortious interference with a contract, and civil

conspiracy and (2) whether the claims are time barred.  As to the statute of limitations, the

parties also dispute whether the claims constitute continuing torts.

        Turning to the underlying facts, in 2007—upon petition filed by Green Hills—the Rankin

County Board of Supervisors created the Stonebridge Public Improvement District ("the

Stonebridge PID") to manage and finance public improvement services for property located

within the then newly established Stonebridge development.  Green Hills was the developer and

owned most of the property.

        In September 2007, the Stonebridge PID's board issued bonds through a Trust Indenture

under which UMB Bank ultimately became the Successor Trustee.  Green Hills and Dell Group

allege that Oppenheimer Funds, Inc., was and remains the majority bondholder.[2]  The

Stonebridge PID assigned the bond proceeds to the Trustee, including special assessments levied

as taxes against landowners in the Stonebridge development.   Those proceeds were intended to

fund, among other things, infrastructure improvements in the Stonebridge development.

---

[1] This is the second time this case has come before the Court to determine whether the parties
have stated a claim.  *See* Order [31].  The Court's prior order is incorporated by reference.

[2] There is some dispute about whether Green Hills and Dell Group named the correct
Oppenheimer entity as a defendant.  The Counterclaim Plaintiffs assert that "[t]he correct
defendant is Invesco Oppenheimer Rochester High Yield Municipal Fund."  Oppenheimer Am.
Ans. [62] at 1.  For ease of reference, the Court refers to this party as Oppenheimer, noting that
at this point the Complaint does not name Invesco.

2

Trouble started when Green Hills failed to pay the assessments levied on properties it owned. According to UMB Bank, Oppenheimer, and the Stonebridge LLCs ("Counterclaim Plaintiffs"), "Green Hills never intended to pay the [s]pecial [a]ssessments." UMB Bank Am. Ans. [60] at 32, Counterclaim ¶ 2.41 (emphasis omitted).[3]

Because Green Hills failed to pay, its residential and commercial lots in the development "were struck off to the state of Mississippi" in 2009 and 2010. State Ct. R. [1-1] at 12, Compl. ¶ 3.12. By statute, Green Hills still held a statutory right of redemption, though it declined to exercise that right. Miss. Code Ann. § 27-45-3. As a result, Counterclaim Plaintiffs aver that "Green Hills did not own any property in the Stonebridge [d]evelopment for the period of September 1, 2010, to March 10, 2016." UMB Bank Am. Ans. [60] at 24, Counterclaim ¶ 2.17.

Nevertheless, Green Hills remained interested in the development, and in May 2010, Green Hills' "acting legal counsel was appointed as counsel to the Stonebridge PID." *Id.* at 25, Counterclaim ¶ 2.21. Counterclaim Plaintiffs UMB Bank, Oppenheimer, and the Stonebridge LLCs allege that through this appointment, Green Hills "us[ed] the PID as artifice, intentionally and with malice" to, among other things, "interfer[e] with various rights and remedies of [Counterclaim Plaintiffs] for the purpose of inflicting harm and benefitting Green Hills." *Id.*

Moving ahead 10 years to 2015, UMB Bank, as successor Trustee, created the Stonebridge LLCs, which included Stonebridge Holdings I, LLC; Stonebridge Holdings II, LLC; and Stonebridge Holdings III, LLC. *Id.* at 26, Counterclaim ¶ 2.24. The sole purpose of the LLCs was to "purchas[e], maintain[], market[,] and sell[] [the Stonebridge property] for the benefit of the. . . [b]ondholders." *Id.*

---

[3] UMB Bank, Oppenheimer, and the Stonebridge LLCs filed separate Amended Answers and Counterclaims. In many ways those pleadings overlap, so where appropriate and convenient, the Court has cited UMB Bank's pleadings.

The Stonebridge LLCs first sought approval for the purchase in federal court in Minnesota. *Id.* at 27, Counterclaim ¶ 2.27. Green Hills was notified but failed to object, so on August 6, 2015, the Minnesota court allowed the Stonebridge LLCs to purchase the properties that had been struck off. *Id.* The Stonebridge LLCs then applied to purchase the properties from the Mississippi Secretary of State—as did other individuals and entities. The Stonebridge LLCs were awarded ownership in June and July 2016.

Green Hills filed its first lawsuit regarding these dealings in Rankin County Chancery Court in July 2016, challenging the validity of the Stonebridge LLCs' purchases (hereinafter the "2016 Lawsuit"). The chancellor dismissed those claims at the summary-judgment stage, and the Mississippi Supreme Court affirmed in part. The Mississippi Supreme Court agreed that Green Hills had notice of its default as to the special assessments and had an opportunity to file an application to retain its ownership interest. *Green Hills Dev. Co., LLC v. Sec'y of State*, 275 So. 3d 1077, 1081 (Miss. 2019). Thus, the Secretary of State was free to sell the property. *Id.* But the appellate court also found that Green Hills' ongoing involvement with Stonebridge gave it standing to challenge whether the subsequent sale to the Stonebridge LLCs violated Mississippi law:

> As developer, Green Hills has [a] colorable interest in whether the purchasers hold valid land patents. Green Hills has also suffered an adverse effect from the purchasers' countersuit . . . to divest Green Hills of its interest in the common areas. Thus, Green Hills has standing to challenge the land patents' validity.

*Id.* Following remand, the chancery court again granted summary judgment. Thus, "[s]ubject to appeal, title to the [Stonebridge p]roperty is vested in the Stonebridge LLCs . . . and Green Hills

has no right, title or interest in such property."  UMB Bank Am. Ans. [60] at 31, Counterclaim ¶ 2.39.[4]

On May 16, 2019—while the 2016 Lawsuit was still pending on appeal—Green Hills and minority-bond-holder Dell Group filed this lawsuit against Oppenheimer, UMB Bank, and the Stonebridge LLCs in Hinds County Circuit Court.  Those Defendants removed the case and then sought dismissal.  Following the Court's ruling on that motion, the remaining original claims include Dell Group's claim for breach of fiduciary duty against UMB Bank; Dell Group's claim for breach of the duty of good faith and fair dealing against all Defendants; and Green Hills' and Dell Group's negligence-based and punitive-damages claims against all Defendants.

Defendants/Counterclaim Plaintiffs UMB Bank, Oppenheimer, and the Stonebridge LLCs then filed Amended Answers and Counterclaims on March 26, 2020.  *See* Defs.' Am. Ans. [60, 61, 62].  They aver that Green Hills and Dell Group, along with three nonparties they hope to join, "engaged in a pervasive pattern of fraudulent conduct and malfeasance" that injured Oppenheimer and the other bondholders.  UMB Bank Am. Ans. [60] at 32–33, Counterclaim ¶¶ 2.42–2.43.

---

[4] As noted below, there is serious dispute whether Green Hills retained ownership in common-area property after 2010, which impacts the claim that Green Hills attempted to interfere with the Counterclaim Plaintiffs' rights and slander their title.  The state-court record might speak directly to that and other relevant questions, but it does not appear that the chancery court's final ruling is in this voluminous record.  At this point, the Court accepts as true the counterclaim averments that Green Hills' claims were dismissed on summary judgment and are now subject to appeal.  UMB Bank Am. Ans. [60] at 31, Counterclaim ¶ 2.39.  Finally, as to what Green Hills may have owned, the Mississippi Supreme Court referred to "common area property," and the parties' briefs variously refer to the "Club House property," Green Hills' Mem. [68] at 3–4, the "Green Hills Property," UMB Bank's Reply [87] at 2, and the "Community Center Parcel," Stonebridge LLCs' Mem. [74] at 6.  These references all seem to address the same property, but there is no way to tell for sure.  For consistency, the Court will refer to the "Community Center Parcel" unless quoting from another source.

Specifically, they say that Counterclaim Defendants (1) omitted material information from a September 21, 2007 Certificate of Developer; (2) purported to amend certain neighborhood covenants in October 2010 and September 2014, after Green Hills lost title to all property and therefore its right to amend the covenants; (3) recorded a *lis pendens* in August 2016 covering all property Green Hills formerly owned in the Stonebridge development; (4) "recorded a fraudulent warranty deed [in December 2015] purporting to transfer a portion of the [Stonebridge p]roperty upon which the Community Center had been constructed from Green Hills to Green Hills," *id.* at 41, Counterclaim ¶ 2.65; and (5) recorded another such deed of trust in July 2017.  They also allege that Counterclaim Defendants drew and attempted "to draw funds . . . from the . . . Trust Estate to which they had and have no rights" and "continue to publicly and fraudulently represent Green Hills as the owner of the Community Center Parcel and 'Declarant' under the Original Covenants."  *Id.* at 43–44, Counterclaim ¶ 3.5.

On these and other alleged facts, Oppenheimer asserted eight counterclaims based on tortious interference with a contract, slander of title, breach of contract, breach of the duty of good faith and fair dealing, civil conspiracy, and a plea for a writ of mandamus.  UMB Bank asserted those same eight claims and added another tortious-interference count while also requesting appointment of a receiver.  The Stonebridge LLCs filed a single counterclaim for slander of title against Green Hills that is distinct from the other slander-of-title counterclaims.  Green Hills and Dell Group now seek dismissal of all counterclaims asserted against them under Federal Rule of Civil Procedure 12(b)(6).[5]

---

[5] Counterclaim Defendants' legal memoranda supporting two of its three motions substantially exceeded the page limit established under Local Rule 7(b)(5).  Having read the replies in full, the Court believes Green Hills and Dell Group could have complied with the 35-page limit.  The parties are instructed to follow the local rules for all future motions.

II.     Motions to Dismiss

    A.     Standard

When considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

    B.     Analysis

Although the parties spend considerable time addressing every alleged act of interference since 2007, the Court will not chase every rabbit. At the Rule 12(b)(6) stage, the counterclaims

will stand if supported by any sufficiently pleaded acts that state a plausible claim.  Accordingly, though some disputed acts might not trigger liability, this Order focuses on the bigger picture.[6]

Turning to the motions, Green Hills asks the Court to dismiss the identically worded tortious-interference claims asserted against it in Counts I and II of UMB Bank's and Oppenheimer's counterclaims.  It also asks the Court to dismiss the slander-of-title counterclaims that all three Counterclaim Plaintiffs filed, though those claims are not coterminous and must be separately evaluated.  And both Green Hills and Dell Group seek dismissal of the civil-conspiracy claims that Oppenheimer and UMB Bank filed.

1.      Tortious-Interference—UMB Bank and Oppenheimer Counterclaims I and II

UMB Bank and Oppenheimer both assert tortious-interference-with-contract claims related to the Trust Indenture against Green Hills (Count I).  They also say that Green Hills tortiously interfered with the Bondholder Funding Agreement (Count II).  To state a claim for tortious interference with a contract under Mississippi law, a party must allege:

> (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitute malice); and (4) that actual damage and loss resulted.

*O.W.O. Invs., Inc. v. Stone Inv. Co., Inc.*, 32 So. 3d 439, 448–49 (Miss. 2010) (quoting *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998)).

---

[6] For example, the parties dispute whether Green Hills' legal filings—including a still-recorded *lis pendens*—constitute tortious interference or slander of title.  As Green Hills argues, statements made in judicial proceedings are privileged.  *See Jourdan River Estates, LLC v. Favre*, 278 So. 3d 1135, 1149 (Miss. 2019) ("Communications published in due course of a judicial proceeding are absolutely privileged and will not sustain an action for slander of title."); *Mize v. Westbrook Constr. Co. of Oxford, LLC*, 146 So. 3d 344, 349–50 (Miss. 2014) (holding that filing of *lis pendens* notice did not slander title).  Counterclaim Plaintiffs ignored Green Hills' legal authority and cited no cases suggesting that legal proceedings filed by a party with standing lack privilege.

To satisfy these elements, UMB Bank and Oppenheimer offer the following averments as

to Count I:

> Green Hills' . . . interference includes prosecuting baseless claims contesting the
> Secretary of State's sale of the Subject Property to the Stonebridge LLCs and the
> Stonebridge LLCs' eligibility to purchase such lands; fraudulently recording the
> Pebble Creek Amendments, Commercial Covenants, 2015 Community Center
> Deed, the 2016 Lis Pendens, and the 2017 Deed of Trust for the sole purpose of
> impairing the marketability and developability of the Subject Property; drawing
> funds and attempting to draw funds, via the Stonebridge PID, from the Series
> 2007 Trust Estate to which they had and have no rights; and making a continuing
> coordinated effort to reduce the value of the Series 2007 Bonds.  Further, upon
> information and belief, Green Hills and [a third party] continue to publicly and
> fraudulently represent Green Hills as the owner of the Community Center Parcel
> and "Declarant" under the Original Covenants for the purpose of interfering with
> UMB Bank's rights under the Trust Indenture.

UMB Bank Am. Ans. [60] at 43–44, Counterclaim ¶ 3.5.

As for the Bondholder Funding Agreement referenced in Count II, the counterclaimants

aver that

> Green Hills' . . . interference includes prosecuting baseless claims contesting the
> Secretary of State's sale of the Subject Property to the Stonebridge LLCs and the
> Stonebridge LLCs' eligibility to purchase such lands; fraudulently recording the
> Pebble Creek Amendments, Commercial Covenants, 2015 Community Center
> Deed, 2016 Lis Pendens, and 2017 Deed of Trust for the sole purpose of
> impairing the marketability and developability of the Subject Property; and
> drawing funds and attempting to draw funds, via the Stonebridge PID, from the
> Series 2007 Trust Estate to which they had and have no rights; and making a
> continuing coordinated effort to reduce the value of the Series 2007 Bonds.
> Further, upon information and belief, Green Hills and [a third party] continue to
> publicly and fraudulently represent Green Hills as the owner of the Community
> Center Parcel and "Declarant" under the Original Covenants for the purpose of
> interfering with UMB Bank ability to perform under the Bondholder Funding
> Agreement, namely to market and sell the Subject Property for purpose of
> repaying amounts due thereunder.

*Id.* at 46, Counterclaim ¶ 3.14.

Green Hills says these claims fail for three general reasons.  First, all pleaded acts for

which dates were provided occurred outside the three-year statute of limitations.  *See* Miss. Code

Ann 15-1-49; *Wertz v. Ingalls Shipbuilding Inc.*, 790 So. 2d 841, 845 (Miss. Ct. App. 2000).

9

Second, some alleged acts were privileged or not unlawful.  Finally, the counterclaims contain numerous conclusory assertions leaving it impossible to know whether the undated acts occurred during the statutory window or would constitute a tort.  These arguments tend to overlap.

Starting with specificity, Green Hills is certainly correct that the counterclaims include conclusory assertions that must be ignored.  *Twombly*, 550 U.S. at 555.  But UMB Bank and Oppenheimer do allege conduct occurring within the three-year window.  According to them, Green Hills filed a deed of trust in 2017 that interfered with the Trust Indenture and the Bond Funding Agreement.  *See* UMB Bank Am. Ans. [60] at 43–44, 46, Counterclaim, ¶¶ 3.5, 3.14. That deed was recorded on July 24, 2017, *id.* at 42, Counterclaim ¶ 2.66, which was less than three years before the February 23, 2020 counterclaims.  So, if filing the deed would plausibly state a claim, that would be enough to deny Green Hills' motions to dismiss Counts I and II.

The 2017 "Deed of Trust and Security Agreement" listed Green Hills as the Grantor/Debtor and "convey[ed] and warrant[ed] unto Trustee [Michael A. Akers] the land described below situated in the County of Rankin, State of Mississippi:  SEE ATTACHED 'EXHIBIT A' FOR LEGAL DESCRIPTION."  2017 Deed [62-25] at 1, 2.  Stonebridge Holdings V, LLC—which is not one of the Stonebridge LLCs that are parties hereto—was designated beneficiary and the "Secured Party."  *Id.* at 1.  The parties seem to agree that this deed related to the Community Center Parcel.  But according to UMB Bank and Oppenheimer, Green Hills had no ownership interest in the property described by that deed.  *See* UMB Bank Am. Ans. [60] at 42, Counterclaim ¶¶ 2.66, 2.67; *see also* UMB Bank Mem. [73] at 9 ("The counterclaims clearly allege that Green Hills has no interest in Community Center Parcel and has not had an interest in such parcel since 2009.").

The dispute over who owned the Community Center Parcel after 2009 is hotly contested in the parties' legal briefs.  And as Green Hills notes, the amended answers and counterclaims are a little fuzzy on this point.  For example, UMB Bank says Green Hills had no ownership interest in the "Subject Property" and therefore the 2017 deed transferring rights in that property was invalid.  UMB Bank Am. Ans. [60] at 42, Counterclaim ¶ 2.66.  But it is unclear whether the defined "Subject Property" includes this parcel.  Paragraph 2.8 of UMB Bank's amended answer defines "Subject Property" as "the lands formerly owned by Green Hills identified in Exhibit B attached hereto."  That exhibit lists over 100 parcels by number (e.g., J0700000800010).  SPEs' Property Legal Descriptions [60-2].  By contrast, the disputed 2017 Deed provides a legal description of property without listing parcel numbers.  *See* 2017 Deed [60-25] at 8.  And there is no way for the Court to know whether the legal description covers the parcel numbers that comprise the "Subject Property."[7]

UMB Bank and Oppenheimer may well have confused the issue by referencing ownership in the "Subject Property."  But reading their counterclaims in the light most favorable to them, they clearly assert that the 2017 Deed was improper because Green Hills had no ownership interest to convey.  *See* UMB Bank Am. Ans. [60] at 42, Counterclaim ¶¶ 2.66, 2.67.  So for now, the Court is unwilling to reject—as a matter of law—the averment that Green Hills lacked an interest in the Community Center Parcel when it transferred those rights to the beneficiary.

---

[7] The Mississippi Supreme Court seemed to suggest that Green Hills had some interest in the Community Center Parcel.  *Green Hills, LLC*, 275 So. 3d at 1088.  That said, UMB Bank and Oppenheimer apparently contested Green Hills' rightful ownership in the state trial court.  *Id.* ("Still pending before the trial court . . . are the Stonebridge [LLC's] counterclaims to strip Green Hills of its rights to enforce the covenants and its title to the common-area property.").  And they claim to have prevailed.  *See* UMB Bank Am. Ans. [60] at 31, Counterclaim ¶ 2.39.

11

UMB Bank and Oppenheimer have therefore stated a plausible claim that the conduct would interfere with the contracts listed in Counts I and II of their counterclaims.  As noted, the Rule 12(b)(6) "standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements."  *In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (quoting *Twombly*, 550 U.S. at 556).  UMB Bank and Oppenheimer have met that standard.

The finding that Counts I and II survive is buttressed by the other interfering conduct alleged in the counterclaims, though the dates for those acts were not pleaded.  For example, UMB Bank and Oppenheimer contend that Green Hills "drew funds, and attempted to draw funds, via the Stonebridge PID, from the Series 2007 Trust Estate to which [it] had no rights." UMB Bank Am. Ans. [60] at 43, 44, Counterclaim ¶ 3.5.

Green Hills responds to such averments by observing that UMB Bank and Oppenheimer failed to plead the dates, so there is no way to know if the acts are time barred.  Possibly so, but "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."  *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).  In other words, a claim could be sufficiently pleaded though the defendant's affirmative defense is not yet evident.

Judge Bramlette faced a similar issue in *Kennedy v. Jefferson County ex rel. Board of Supervisors*, where the plaintiff had "not supplied dates for the allegedly slanderous statements." No. 5:13-CV-226-DCB-MTP, 2015 WL 4251070, at *5 (S.D. Miss. July 13, 2015).  The court concluded under Rule 56 that there existed "sufficient factual questions about these potential statements to warrant resolution by a jury," noting that the plaintiff would have to prove the statements were "still actionable."  *Id.*

The logic for this approach is even more compelling at the Rule 12(b)(6) stage, where the pleader must merely assert "enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (quoting *Twombly*, 550 U.S. at 556); *see also E.E.O.C. v. Hi-Line Elec. Co.*, No. 3:09-CV-1848-F, 2010 WL 11565412, at *3 (N.D. Tex. Jan. 29, 2010) (denying Rule 12(b)(6) motion where complaint failed to provide specific dates but alleged that conduct was ongoing).

UMB Bank and Oppenheimer also assert that the continuing-tort doctrine applies to all wrongful conduct occurring before the statutory window. The parties spend considerable time on this issue—and will likely do so again under Rule 56. The Court will therefore frame the issues for later discussion, but it does not now relying on the continuing-tort doctrine.

According to the Mississippi Supreme Court,

> [a] continuing tort is one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation.

*Jourdan River Estates, LLC*, 278 So. 3d at 1150 (quoting *Humphries v. Pearlwood Apartments P'ship*, 70 So. 3d 1133, 1135 (Miss. Ct. App. 2001)). Thus, "acts that take place outside the . . . statute of limitations are actionable if, and only if, they are directly connected to an ongoing pattern of tortious conduct and at least one tortious act occurred within the . . . limitations period." *Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 741 (5th Cir. 2005) (citing *McCorkle v. McCorkle*, 811 So. 2d 258, 264 (Miss. Ct. App. 2005)). On the other hand, "[w]here the tortious act has been completed, or the tortious acts have ceased, the period of limitations will not be extended on the ground of a continuing wrong." *Pierce v. Cook*, 992 So. 2d 612, 619 (Miss. 2008) (quoting *Stevens v. Lake*, 615 So. 2d 1177, 1183 (Miss. 1993)).

To begin, the parties thoroughly briefed the pending motions, but neither side sufficiently analyzed this issue when applied to these claims.  For example, UMB Bank and Oppenheimer cited cases stating the general rules without examining those rules in this context.  They also argued that merely leaving certain filings on the public record is enough to trigger the continuing-tort doctrine.  They cited no compelling authority for that argument, and it seems weak.  *See Lincoln v. Magnum Land Servs., LLC*, 560 F. App'x 144, 151–52 (3d Cir. 2014) (rejecting argument that leaving land records on the books constituted a continuing tort because the "focus of the continuing violation doctrine is on affirmative acts of the defendants," and concluding that the claims accrued when the assignments were recorded); *see also Hazzard v. Chase Manhattan Corp.*, No. 00-60607, 2001 WL 1465376, at *2 (5th Cir. Oct. 23, 2001) (holding that failure to correct mistake that damaged plaintiff's credit score was not a continuing tort under Mississippi law); *Walley v. Hunt*, 54 So. 2d 393, 398 (Miss. 1951) (holding that right to sue for slander of title "accrued at the time of the execution and filing for record of said mineral deeds").

Green Hills did better, primarily relying on *Winters v. AmSouth Bank*, 964 So. 2d 595 (Miss. Ct. App. 2007).  But *Winters* is non-binding and somewhat distinguishable.  There, the plaintiff sued a bank for breach of fiduciary duties, "argu[ing] that the Bank [] made continued and repeated injuries to [their] estate."  964 So. 2d at 600.  The Mississippi Court of Appeals disagreed, concluding that

> each wrongful act or omission alleged by [the plaintiffs] is identifiable and distinct.  The [plaintiffs'] complaint points to numerous instances of alleged wrongful or negligent conduct, however, the acts or omissions asserted are not continual.  There is an ascertainable date on which the acts or omissions occurred and the tort was complete.  The [plaintiffs] essentially claim that the effects of multiple wrongful or negligent acts have combined to produce an ongoing injury in the form of monetary loss.  Although the ill effects of [the bank]'s alleged

wrongful acts may be continual, this does not warrant the application of the continuing[-]tort doctrine.

*Id.*

Unlike a series of mistakes that each separately supports a breach-of-fiduciary-duty claim, the alleged conduct here might support the conclusion that there has been an "ongoing pattern of tortious conduct" designed to collectively interfere with the rights to the disputed property. *Bellum*, 407 F.3d at 741. In other words, Green Hills' alleged actions might be part of an ongoing pattern to tortiously interfere (or slander title). So, while *Winters* may ultimately inform the Court's decision if this issue reappears, the Court is not yet ready to say that it controls.

The Court reaches that conclusion in part because this issue may present a question of fact or a mixed question of law and fact. "Occasionally the question of whether the suit is barred by the statute of limitations is a question of fact for the jury; however, as with other putative fact questions, the question may be taken away from the jury if reasonable minds could not differ as to the conclusion." *Snider v. L-3 Commc'ns Vertex Aerospace, L.L.C.*, 946 F.3d 660, 669 (5th Cir. 2019) (quoting *Raddin v. Manchester Educ. Found., Inc.*, 175 So. 3d 1243, 1249 (Miss. 2015)). And the Fifth Circuit has observed that the continuing-tort doctrine may depend on fact questions and is not a "pure question[] of law." *State Indus. Prod. Corp. v. Beta Tech. Inc.*, 575 F.3d 450, 456 (5th Cir. 2009). The parties should address these issues if Green Hills eventually asserts the limitations period under Rule 56.

In sum, UMB Bank and Oppenheimer have pleaded plausible tortious-interference claims. But that victory will be short lived if, under Rule 56, they fail to show that Green Hills transferred non-existent rights through the 2017 deed or otherwise fail to identify tortious

conduct occurring within the statutory window.  If there is no tortious conduct with the window,

then the earlier acts will be time barred.  *See Jourdan*, 278 So. 3d at 1149.

>2.      Slander-of-Title Claims

UMB Bank, Oppenheimer, and the Stonebridge LLCs all assert slander-of-title

counterclaims against Green Hills, but the Stonebridge LLCs' claim is a little different.  "To

succeed in an action for slander of title, a claimant must show that another has *falsely* and

*maliciously* published statements that disparage or bring into question the claimant's right of title

to the property, thereby causing special damage to the claimant."  *Mize*, 146 So. 3d at 348

(emphasis in original).  "The statute of limitations for . . . slander of title is one year."  *Jourdan*

*River Estates, LLC*, 278 So. 3d at 1148 (citing Miss. Code Ann. § 15-1-35).

According to the Stonebridge LLCs, Green Hills slandered title to the "subject property"

in the following ways:

> At all times relevant hereto and continuing until the initiation of this action, Green
> Hills and [a third party] have falsely, maliciously and repeatedly made and
> published, and continue to make and publish statements that disparage or bring
> into question Stonebridge LLC's title to the Subject Property and, therefore, the
> bondholders' beneficial interest in such property.  These statements, made falsely,
> maliciously and repeatedly to cause special damage to the bondholders, include
> recording and allowing to remain of record the fraudulent 2015 Community
> Center Deed; recording and allowing to remain of record the fraudulent 2017
> Deed of Trust; failure to remove the Lis Pendens; statements that the Forfeited
> Tax Land Patents issued by the Secretary of State to the Stonebridge LLCs were
> "void;" the placing of record and allowing to remain of record, by Green Hills and
> Turnage of the Pebble Creek Amendments and Commercial Covenants for the
> sole purpose of discouraging or preventing the sale to or further development of
> the Subject Property by anyone other than Green Hills and Turnage; and
> continued representations to the Pebble Creek HOA and others that Green Hills is
> the owner of the Community Center property and "Declarant" under the Original
> Covenants.

Stonebridge LCCs Am. Ans. [61] at 42, Counterclaim ¶ 3.8.

UMB Bank and Oppenheimer say Green Hills committed slander of title as to the Series 2007 Trust Estate. *See* UMB Bank Am. Ans. [60] at 49–50, Counterclaim ¶ 3.30. Their core factual assertions are that

> [a]t all times relevant hereto and continuing until the initiation of this action, Green Hills, Turnage and [a third party] have falsely, maliciously and repeatedly made and published, and continue to make and publish statements that disparage or bring into question UMB Bank's right, title and interest to the Series 2007 Trust Estate, including the Special Assessments and the Subject Property, and, therefore, the bondholders' beneficial interest in such property. These statements, made falsely, maliciously and repeatedly to cause special damage to the bondholders, include (i) statements that Green Hills has an interest in or right to monies on deposit in the Developer Reserve Account to which the Trustee has legal title and Invesco has beneficial title, (ii) statements the Stonebridge PID–not the Series 2007 Trust Estate and the holders of beneficial interests therein–has rights, title and interest in the Special Assessments as evidenced by [a third party's] certification of assessment rolls to the Rankin County Tax Assessor for Fiscal Years 2017-2019, (iii) instruments fraudulently and publicly recorded against the Subject Property, (iv) failing to remove the 2016 Lis Pendens publicly recorded against the Subject Property, and (v) upon information and belief, continuing statements to the Pebble Creek HOA regarding title to all or a portion of the Subject Property and applicability of architectural control and covenants reflected in instruments recorded by Turnage and Green Hills after the Original Covenants.

*Id.*

The analysis of these claims tracks the analysis of the tortious-interference claims, focusing largely on whether Counterclaim Plaintiffs have asserted any acts within the one-year statute of limitations. To begin, the Court must again ignore conclusory assertions. *Twombly*, 550 U.S. at 555. Moreover, Green Hills' legal filings are not actionable. "Communications published in due course of a judicial proceeding are absolutely privileged and will not sustain an action for slander of title." *Mize*, 146 So. 3d at 349. "For example, the filing of a *lis pendens* notice in the due course of a judicial proceeding will not give rise to slander of title." *Id.*

That said, the slander-of-title claims cannot—yet—be dismissed based on the one-year statute of limitations. All three Counterclaim Plaintiffs plead facts supporting a plausible claim

17

that Green Hills committed slander of title.  For example, they claim that Green Hills made "continuing statements to the Pebble Creek HOA regarding title to all or a portion of the Subject Property."  UMB Bank Am. Ans. [60] at 49–50, Counterclaim ¶ 3.30; *see also* Stonebridge LLCs Am. Ans. [61] at 43, Counterclaim ¶ 3.8 (same); Oppenheimer Am. Ans. [62] at 49, Counterclaim ¶ 3.21 (same).  UMB Bank and Oppenheimer also allege that Green Hills made "statements [that] the Stonebridge PID—not the Series 2007 Trust Estate and the holders of beneficial interests therein—has rights, title and interest in the Special Assessments as evidenced by [the] certification of assessment rolls to the Rankin County Tax Assessor for Fiscal Years 2017–2019."  UMB Bank Am. Ans. [60] at 49, Counterclaim ¶ 3.30; *see* Oppenheimer Am. Ans. [62] at 49, Counterclaim ¶ 3.21.  These alleged facts present plausible slander-of-title claims.

Finally, the failure to allege dates is not fatal under Rule 12(b)(6), because Green Hills' affirmative defense is not "evident" from the face of the pleadings.  *Jones*, 339 F.3d at 366.  The Counterclaim Plaintiffs must eventually show conduct within the statutory window, but as with the tortious-interference claim, they need not plead an air-tight claim in their opening pleading. Instead, they must plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary claims or elements."  *In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (quoting *Twombly*, 550 U.S. at 556).  They have done so for this claim and the damages they say are causally related to the alleged breaches.

### 3.      Civil-Conspiracy Claims

"Under Mississippi law, the elements of a civil conspiracy are:  '(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a

proximate result.'" *Rex Distrib. Co., Inc. v. Anheuser-Busch, LLC*, 271 So. 3d 445, 455 (Miss. 2019) (quoting *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013)).

Green Hills and Dell Group describe the civil-conspiracy counterclaims as pleaded "[i]n true shotgun fashion, without identifying the separate acts of [Counterclaim] Defendants as to the purported conspiracy, much less the timing or when any meeting of the minds occurred." Counterclaim Defs.' Mem. [66] at 17.  They also piggyback on their arguments for dismissal of the other claims, noting that a civil-conspiracy claim "must be based on an underlying tort," and arguing that, if the Court dismisses the underlying torts, it must also dismiss the conspiracy claim.  *Id.* at 18 (quoting *Fikes v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 815, 822 (N.D. Miss. 2011)).  But the Court has not dismissed the underlying tort claims.  And while the civil-conspiracy counts themselves are relatively brief, they incorporate and reference the thorough, detailed factual allegations otherwise contained in the Counterclaims.  UMB Bank and Oppenheimer state facially plausible civil-conspiracy claims.

III.    Motion to Join Parties and Motion to Stay Ruling

Counterclaim Plaintiffs assert causes of action against Ben O. Turnage, Jr., Jeff Goodwin, and the Stonebridge PID, none of whom are currently parties to this suit.  Accordingly, they seek leave to join those third parties in this action.

A.    Standards

Federal Rules of Civil Procedure 19 and 20 "govern the addition of a person as a party to a counterclaim or crossclaim."  Fed. R. Civ. P. 13(h).  Under Rule 19, a party is indispensable—and, therefore, must be joined in the lawsuit—if "in that person's absence, the court cannot accord complete relief among existing parties," or if the absent person has an interest in the subject of the action and "disposing of the action in the person's absence may:  (i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) leave an existing party subject to a

19

substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

Green Hills and Dell Group focus their opposition to joinder on Rule 19, arguing that the third parties—especially Turnage—are not indispensable.   Counterclaim Defs.' Mem. [53] at 11. That argument raises tricky and under-briefed issues, like the extent to which UMB Bank's failure to name Turnage in an earlier suit impacts whether he is indispensable under Rule 19. Though interesting, the Court will not address that point because joinder is proper under Rule 20.

Under Rule 20(a)(2), "[p]ersons . . . may be joined in one action as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." *See Travelers Indem. Co. v. Forrest Cty.*, No. 2:14-CV-22-KS-MTP, 2014 WL 12769805, at *3 (S.D. Miss. Dec. 16, 2014) (permitting joinder of counterclaim defendants under Rules 13(h) and 20(a) because claims concerned same transaction, occurrence, or series of transactions or occurrences).  The Fifth Circuit has described Rule 20's application to permissive joinder of *plaintiffs* as follows:

> Generally, as long as both prongs of the test are met, "permissive joinder of plaintiffs . . . is at the option of the plaintiffs." *Applewhite* [*v. Reichhold Chems., Inc.*], 67 F.3d [571,] 574 [(5th Cir. 1995)]; *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) ("Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").  However, even if this test is satisfied, district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, *Applewhite*, 67 F.3d at 574, ensuring judicial economy, *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 581 (E.D.N.Y. 1999), or safeguarding principles of fundamental fairness.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000).

*Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010).

B.     Analysis

Counterclaim Defendants never suggest that the proposed claims against Turnage, Goodwin, and the Stonebridge PID fail Rule 20's technical requirements.  Nor could they.  They argue instead that the claims would be futile.[8]

Assuming futility is a valid theory in this context, the argument turns on a distinct procedural history involving two state-court proceedings over the Stonebridge property. According to Green Hills and Dell Group, UMB Bank's actions in those cases preclude joinder. As they assert, Turnage was never named in those earlier cases and the claims against Goodwin and the Stonebridge PID were dismissed.  A closer look at that additional procedural history is now necessary.

As previously noted, Green Hills sued UMB Bank and others in the 2016 Lawsuit filed in the Chancery Court of Rankin County, Mississippi.  That case is apparently on a return trip to the Mississippi Supreme Court.  *See* UMB Bank Am. Ans. [60] at 31, Counterclaim ¶ 2.39. Although UMB Bank filed counterclaims, it did not name Turnage.

About six years earlier, the original Trustee, Bank of the Ozarks, filed a complaint for judicial foreclosure against Green Hills, the Stonebridge PID, and others ("the 2010 Lawsuit"). Counterclaim Defs.' Mem. [52] at 10.   The Trustee originally filed in the Chancery Court of Rankin County, Mississippi, seeking purely equitable relief.  *See* 2010 Lawsuit, Compl. [50-1]. Roughly six years later, UMB Bank (as successor Trustee) and the newly created Stonebridge LLCs moved to amend the complaint.  *See* 2010 Lawsuit, Mot. to Am. [50-3].  That amendment

---

[8] The parties never substantively address whether futility applies under Rule 20—as opposed to Rule 15—but *Acevedo* holds that courts have discretion to deny joinder even when Rule 20's technical requirements are satisfied.  *Id.*  The Court therefore assumes without deciding that futility is a valid argument if proven.

dropped the claims for equitable relief and added tort- and contract-based claims against Green Hills, the Stonebridge PID, and Goodwin. *Id.* The case was then transferred to circuit court, where the judge dismissed the claims against Goodwin, *see* 2010 Lawsuit, Order Dismissing Goodwin [50-9], and then ruled that the new claims against Green Hills and the Stonebridge PID were time barred, *id.*, Order Dismissing Green Hills [50-7] at 2–3; 2010 Lawsuit, Order Dismissing the Stonebridge PID [50-8] at 2–3.

According to Green Hills and Dell Group, this history precludes Counterclaim Plaintiffs from suing Turnage and again attempting to sue Goodwin and the Stonebridge PID. To some extent, they could be right. Indeed, it seems that all parties must eventually address collateral estoppel and/or res judicata. But that is another issue the Court need not decide today because the claims in the 2010 Lawsuit and the 2016 Lawsuit do not entirely replicate the disputed counterclaims.

Starting with Turnage, Green Hills and Dell Group offer no authority suggesting that permissive joinder is precluded where a party declined to sue one of several potentially liable parties in a prior suit. Moreover, the allegations against Turnage in this case are not entirely the same as those in the 2010 Lawsuit or the 2016 Lawsuit. *See* UMB Bank Am. Ans. [60] at 43–53, Counterclaim ¶¶ 3.4, 3.5, 3.13, 3.14, 3.30, 3.36, 3.41.[9]

---

[9] Green Hills and Dell also argue that the judge in the 2010 Lawsuit "ruled that UMB Banks' [sic] claims against Green Hills were time barred and did not constitute continuing breaches of contract or *torts*." Counterclaim Defs.' Mem. [53] at 15 (emphasis added). That ruling is not apparent from the order they cite. The state-court judge held that there is no continuing-violation rule for breach of contract. *See* 2010 Lawsuit, Order Dismissing Green Hills [50-7] at 5 (rejecting "continuing-breach argument" because "in the case of a breach of contract, the cause of action accrues at the time of the breach" (quoting *Wallace v. Greenville Pub. Sch. Dist.*, 142 So. 3d 1104, 1007 (Miss. Ct. App. 2014)). Such a ruling would not necessarily apply to tort claims.

As to Goodwin, Green Hills and Dell Group spend little time on this part of the motion. They assert that Goodwin sought dismissal in the 2010 Lawsuit "contending, among other arguments, that he could not be individually liable for his actions taken as a member of the PID and that the new claims [*i.e.*, those UMB Bank added by amendment to the 2010 Lawsuit] were time-barred."  Counterclaim Defs.' Mem. [53] at 23.  The trial court granted that motion, leading Green Hills and Dell Group to argue in the present case that Goodwin is not "a necessary party in this litigation."  *Id.*  They then reiterate that by statute, Goodwin may not be held personally liable. *Id.* at 23–24.

Working backwards, there is no indication that the state-court judge found Goodwin immune from liability.  The one-paragraph order merely grants Goodwin's motion without explaining the basis.  *See* 2010 Lawsuit, Order Dismissing Goodwin [50-9].  In addition, Counterclaim Defendants cite no statute supposedly creating immunity.  Finally, the claims asserted against Goodwin in the 2010 Lawsuit were for injunctive relief related to the composition of the Stonebridge PID board.  *See* 2010 Lawsuit, Am. Compl. [50-2] ¶¶ 283–301. The claims against Goodwin in this case are for tortious interference with a contract, slander of title, and civil conspiracy.  *See, e.g.*, UMB Bank Am. Ans. [60] at 42–58, Counterclaim Counts I, III, IV, and IX.  The claims are not the same, and the current claims include conduct that allegedly occurred after the judge dismissed the claims in the 2010 Lawsuit.  *See, e.g.*, *id.* at 29, Counterclaim ¶¶ 2.32, 3.22, 3.30.

So too, the claims against the Stonebridge PID in this suit differ from those in the other state-court actions.  Starting with the 2010 Lawsuit, UMB Bank asserted six claims against the Stonebridge PID.  The first three sought declaratory judgment related to the PID board.  *See*

2010 Lawsuit, Order Dismissing Stonebridge PID [50-8] at 2.  The fourth and fifth also related to the board and sought a writ of mandamus.  *Id.*  Those issues are not asserted in the present case.

Count Six of the 2010 Lawsuit is a bit different.  It asserted that Stonebridge PID breached duties under the Trust Indenture and the Disclosure Agreement.  *Id.*  Those same documents premise the breach-of-contract claims in this case, but the claims themselves are not the same because Counterclaim Plaintiffs now assert breaches occurring after the state-court judge dismissed the Stonebridge PID in August 2017.  *See id.*  For example, the breach-of-contract claim reflected in Count IV lists nine acts occurring in 2018 and 2019.  *See* UMB Am. Ans. [60] at 51, Counterclaim ¶ 3.36.  Green Hills and Dell Group have not explained how the 2017 judgment in the 2010 lawsuit precludes suing the Stonebridge PID for acts allegedly committed after dismissal.  And as for the 2016 lawsuit, nothing in the present record indicates that the Stonebridge PID was named as a defendant in those counterclaims.  *See* 2016 Lawsuit, Stonebridge LLCs Ans. [50-5] at 23.

Finally, the other Rule 20 considerations are no impediment to joinder.  First, delay is not an issue.  The parties have already litigated these claims for nearly a decade, yet the current case remains in its infancy because they have disputed every procedural step.  Second, joining Turnage, Goodwin, and the Stonebridge PID will promote efficiency and economy.  Whether they are added as parties, they will remain central to discovery and at trial.  Plus, UMB Bank and the Stonebridge LLCs could simply assert these claims in a separate suit if the motion to join is denied.  Third, for these same reasons, the Court sees no prejudice.  Accordingly, the Court concludes that Turnage, Goodwin, and the Stonebridge PID may be joined in this case.

IV.     Conclusion

The Court has considered all arguments.  Those not addressed would not have changed the outcome.  For the foregoing reasons, Counterclaim Defendants' Motions to Dismiss Counterclaims [65, 67, 69] are denied.  The motion to join third parties [36] is granted.  Because the Court has granted leave to join the third parties, the motion to stay [51] is denied as moot, and the motion for permission to serve [93] is granted.

Finally, the Court notes that the parties cancelled the settlement conference previously set for July 7, 2020.  That decision was understandable given the then-pending motions.  But the parties now know which claims will move forward.  They also know the facts—having already litigated this case for about 10 years—and understand how dramatically their expenses will escalate after today.  As noted in this Order, the Court expects additional motion practice, potentially including at least two additional rounds of dispositive briefing.  Cross-motions for summary judgment seem likely, and both sides should have something to worry about because both have presented claims that appear weak.  If the claims ultimately survive those cross-motions, the real expenses will start because the case will be time-consuming and very expensive to try.  Finally, the parties continue to litigate many of these very same issues and claims in state court, where they must have already spent substantial sums.  All that suggests that this is an opportune time to explore resolution.  The parties are therefore instructed to contact Judge Ball to set this matter for settlement conference.

**SO ORDERED AND ADJUDGED** this the 4th day of August, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE